UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:  Chapter 11

Kearney Construction Co., LLC,  Case No. 8:09-bk-18848-CED

   Debtor.
_____/

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S
OBJECTION AND OPPOSITION TO THE DEBTOR'S EMERGENCY MOTION
FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH
COLLATERAL AND GRANTING REPLACEMENT LIEN PURSUANT TO
SECTIONS 105(a), 361, 363, 541 AND 552 OF THE BANKRUPTCY CODE AND
RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Travelers Casualty and Surety Company of America ("Travelers"), through undersigned counsel, respectfully submits its Objection and Opposition to the Debtor's Emergency Motion for Interim and Final Orders Authorizing Use of Cash Collateral (the "Cash Collateral Motion"). As set forth below, the Cash Collateral Motion appears to seek to divert bonded contract funds that are not property of the estate away from the bonded projects and to improperly use those funds for expenses other than direct project costs, to the detriment of the owners of those projects and the subcontractors and suppliers who earned or will earn those contract balances. These funds are trust funds, dedicated to the performance of the work. The Debtor is absolutely not entitled to use other people's money to reorganize. Alternatively, Travelers is entitled to adequate protection in the form of an Order requiring the Debtor to separately escrow all bonded contract funds and to use said funds only for direct bonded contract payables. In support of its objection and opposition, Travelers states:

1. On August 26, 2009, the Debtor filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code.

2. At all material times, the Debtor was engaged in commercial construction.

3. At the time that the Debtor sought protection, Debtor was a party to a number of ongoing construction contracts, including those listed in Exhibit "A" (collectively, the "Active Bonded Contracts"); and to a number of completed contracts that may have continuing maintenance, warranty and/or latent defect exposure (collectively, the "Inactive Bonded Contracts"). The Active Bonded Contracts and the Inactive Bonded Contracts are sometimes collectively referred to as the "Bonded Contracts."

4. In the Cash Collateral Motion, the Debtor has asked the Court to allow it to collect and use certain Bonded Contract Sums, but has not agreed to use those Bonded Contract Sums solely for the payment of direct Bonded Contract costs, nor has the Debtor stated whether it intends to assume or reject any or all of the Bonded Contracts.[1]

5. The Debtor was required to provide a payment bond and a performance bond in connection with each of the Bonded Contracts, as security for the Debtor's performance under the Bonded Contracts and payment of laborers and materialmen providing labor and materials incorporated into the work under the Bonded Contracts,

---

[1] Travelers will be filing a separate Motion to Shorten the Period and Set a Date Certain for Debtor to Assume or Reject Bonded Contracts.

and sought said bonds from Travelers, a surety in the business of providing payment and performance bonds to selected entities.

6. Before it would issue said performance and payment bonds, Travelers required certain protections from the Debtor of monies to be paid to the Debtor under the Bonded Contracts and from loss to Travelers in the event that the Debtor failed to perform all of its obligations under the Bonded Contracts or to pay labor and material suppliers on the Bonded Contracts.

7. In order to induce Travelers to issue the bonds, the Debtor (and others) signed a General Agreement of Indemnity (the "Indemnity Agreement") with Travelers, a copy of which is attached as Exhibit "B."

8. In reliance on the Indemnity Agreement, Travelers issued performance and payment bonds on behalf of and at the request of the Debtor on the Bonded Contracts.

9. The contract sums on the Bonded Contracts (the "Contract Sums") are trust funds for payment of the costs of completing the work under the Contracts and payment of those supplying labor and materials used in the prosecution of work under the Contracts, and Travelers has a first priority right to the Contract Sums under the Indemnity Agreement and principles of equitable subrogation. *See Federal Ins. Co. v. Community State Bank*, 905 F.2d 112 (5th Cir. 1990); *United States Fidelity & Guaranty Co. v. Housing Authority of the Town of Berwick*, 557 F.2d 482 (5th Cir. 1977). The

Contract Sums serve to reduce the loss to Travelers in the event of the failure of the Debtor to perform under the Bonded Contracts.

    10. The Indemnity Agreement provides, in pertinent part:

**1.** . . . **Contract** – Any contract or obligation the performance of which is guaranteed or covered either in whole or in part under a Bond.

* * *

**9.**    **Trust Fund:** All payments due or received for or on account of any Contract, whether or not in the possession of any Indemnitor, shall be held in trust as trust funds by Indemnitors for the benefit and payment of all obligations for which Company as beneficiary may be liable under any Bond. Company may open a trust account or accounts with a bank for the deposit of the trust funds. Upon demand, Indemnitors shall deposit therein all trust funds received. Withdrawals from such trust accounts shall require the express consent of Company.

* * *

**12.**    **Security Interest:** As security for their obligations hereunder, Indemnitors hereby grant to Company a security interest in the following properties, assets and rights or Indemnitors, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof: all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, securities and all other investment property, supporting obligations, any Contract or contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (the "Collateral"). This Agreement shall for all purposes constitute a Security Agreement for the benefit of Company in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. Indemnitors hereby irrevocably authorize Company, without notice to any Indemnitor, in order to perfect the security interest granted herein, to file either: (a) this Agreement or a copy or other reproduction of this Agreement; or (b) any initial financing statements or amendments thereto that indicate the Collateral as all assets of Indemnitors or words of similar effect, as being of an equal or lesser scope or with greater detail and

that contain any other information relating to any Indemnitor required by Part 5 of Article 9 of the UCC for the jurisdiction where such financing statement or amendment is filed. Company may add schedules or other documents to this Agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement.

11. The Debtor has been terminated by the owner on the Pasco County US 41 Tower Road Project, and claim has been made against Travelers under the Performance Bond issued on behalf of the Debtor on that project.

12. Also, the Debtor has failed to pay certain subcontractors and suppliers on Active Bonded Projects. Specifically, suit has been filed by the Middlesex Corporation, a subcontractor to the Debtor on the Intersection Improvements Project in the matter entitled *Middlesex Corporation v. Kearney Construction Co., LLC., and Travelers Casualty & Surety Co. of America*, bearing number 09-19590 on the docket of the Circuit Court for Hillsborough County, alleging that it has not been paid the sum of $1,060,807.93 for materials and labor provided on the Intersections Improvements Project. Suit has also been filed by the Middlesex Corporation, also a subcontractor to the Debtor on the Intersection Improvements Project in the R 50 Widening and Intersection in the matter entitled *Middlesex Corporation v. Kearney Construction Co., LLC., and Travelers Casualty & Surety Co. of America*, bearing number 09-19592 on the docket of the Circuit Court for Hillsborough County, alleging that it has not been paid the

sum of $1,060,807.93 for materials and labor provided on the Intersections Improvements Project. Copies of the Middlesex Complaints are attached as *in globo* Exhibit "C."

13. Further, Travelers has received payment bond claims totaling at least $5,609,087.42 (including Middlesex Corporation) alleging that the Debtor has failed to pay subcontractors and suppliers on Bonded Contracts for labor and materials incorporated into the Bonded Projects. A spreadsheet showing the claimants, bond numbers, and amounts claimed is attached as Exhibit "D."

14. Further, based on payables information obtained from the Debtor, it owes subcontractors and suppliers billed but unpaid amounts of $7,525,711 and retainanges of $616,156 on Active Bonded Contracts. Funds are owed to subcontractors and suppliers, according to the Debtor's records on all of the Active Bonded Contracts except for the Onside Improvements for Tierra Del Sol Plaza, LLC and Tampa Parcel E @ International Plaza Mall Projects.

15. Further, based on cost to complete and payables information obtained from the Debtor, it appears that the cost to complete the Active Bonded Contracts and pay amounts owed by the Debtor to subcontractors and suppliers for work on the Active Bonded Contracts will likely exceed the unpaid Contract Sums.

16. One or more of the events set forth in Paragraph 1 (Default) of the Indemnity Agreement has occurred, including, without limitation: (a) declaration of Contract default by an Obligee; (b) actual breach or abandonment of a Bonded Contract;

(c) a breach of any provision of the Indemnity Agreement; and (d) failure to make payment of a properly due and owing bill in connection with a Bonded Contract; and (g) another indemnitor (a related company of Debtor) filing for bankruptcy. Debtor's Cash Collateral Motion further improperly attempts to divert Bonded Contract funds to the detriment of Contract obligations in violation of Paragraph 1 (Default) (f) of the Indemnity Agreement.

17. The Contract Sums are not property of the estate within the meaning of 11 U.S.C. § 541 as the Debtor has been terminated on one of the Bonded Contracts and has failed to pay subcontractors and/or suppliers for work performed on certain Bonded Contracts, and owes significant billed but unpaid amounts to other subcontractors and/or suppliers on Bonded Contracts. Therefore, the Debtor did not earn the Contract Sums, which represent work performed by a subcontractor and/or supplier and further must be used to complete the Bonded Contracts. In addition, prior to the Debtor's filing of the Bankruptcy, Travelers asserted its ownership and control over the Bonded Contract Sums.

18. Further, the Debtor has not agreed to complete the Bonded Contracts, nor has the Debtor demonstrated an ability to complete the Bonded Contracts.

19. The Contract Sums are not property of the estate within the meaning of 11 U.S.C. § 541 to the extent that the Debtor has failed to pay its subcontractors and suppliers. To the extent that the Debtor has failed to pay subcontractors and suppliers, it

has not earned the Bonded Contract Collateral which represents work performed by these subcontractors and suppliers. Further, the Debtor is not entitled to Contract Sums on projects where it has been terminated and on projects that it has not agreed to complete. *See Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 135-36, 83 S.Ct. 232, 237 (1962) (recognizing surety's priority right to contract funds); *In re Modular Structures, Inc.*, 27 F.3d 72, 77 (3rd Cir. 1994); *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 320 (5th Cir. 1967), *cert. denied*, 390 U.S. 906, 88 S.Ct. 820 (1968); *Capitol Indemnity Corp. v. Heidkamp*, 312 B.R. 437 (M.D. Fla. 2003); *In re Colt Engineering, Inc.*, 288 B.R. 861 (Bankr. C.D. Ca. 2003); *In re Pacific Marine Dredging & Construction*, 79 B.R. 924, 929 (Bankr. D.Or. 1987). The Debtor has failed to earn the Contract Sums, and they are not property of the estate. In *Modular Structures*, the Court noted:

> We conclude that, based upon the record currently available in the present case, Modular breached its contractual obligation to pay its subcontractors and was therefore not "owed" the monies held by the [Owner]. Under those circumstances, those funds are not properly considered part of the estate in bankruptcy and are not subject to the Bank's superpriority lien.

27 F.3d at 77.

20. The Middle District of Florida has applied *Pearlman* and upheld the surety's right of equitable subrogation in and to the contract funds. *Capitol Indemnity*, supra, 312 B.R. at 442; *see also In re Cone Constructors, Inc.*, 265 B.R. 302, 308-309 (Bkrtcy. M.D. Fla. 2001); *In re Caddie Construction Co.*, 125 B.R. 674, 678 (Bkrtcy. M.D. Fla. 1991).

Thus, the Debtor should not be permitted to use contract funds for any purpose other than to pay amounts owed to subcontractors and suppliers and direct Bonded Contract costs

21. Travelers further has a priority interest in the Contract Sums as the subrogee of the obligees on and claimants under the Bonds. *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.*, 540 So. 2d 113 (Fla. 1989); *see also Federal Insurance Co. v. Community State Bank*, 905 F.2d 112 (5th Cir. 1990); *United States Fidelity & Guaranty Company v. Housing Authority of the Town of Berwick*, 557 F.2d 482 (5th Cir. 1977); *See also In the Matter of J.V. Gleason Co., Inc.*, 452 F.2d 1219 (8th Cir. 1971) (subrogation right attaches even in the absence of a UCC-1 filing). Here, however, Travelers also has a recorded UCC-1 filing.

22. Additionally, the Contract Funds, by virtue of the Trust Fund provisions of the Indemnity Agreement, are dedicated to the completion of and payment of claims on the Bonded Projects.

23. The Debtor does not have the right to distribute other people's property among its creditors (or itself). *Pearlman, supra*, 371 U.S. at 135-136. In fact, under Florida law, it is a criminal act to fail to use contract funds to pay subcontractors and suppliers on that project. § 713.345, Florida Statutes.

24. Alternatively, Travelers is entitled to adequate protection of the Contract Sums to insure that they are used solely for direct Bonded Contract Costs.

25. Bankruptcy courts have protected the surety's interest in contract funds by limiting the debtor's use of the contract funds to the bonded project and requiring the debtor to separately account for contract funds. See In re RAM Construction Co., 32 B.R. 758 (Bankr. W.D. Pa. 1983) (noting that "the surety would not be adequately protected if the Debtor was free to pay money received from the owners for Debtor's expenses on other contracts"); *See also* § 363(c)(4) (requiring the Debtor to "segregate and account for any cash collateral").

26. Accordingly, Travelers is entitled to adequate protection of the Contract Sums in the form of an Order requiring that the Contract Sums, as collected, be deposited into a separate trust account that requires the signature of the Debtor and Travelers before funds can be disbursed, and an Order that the Contract Sums can be used only for direct Bonded Project costs, and not for other purposes, such as payment of officer salaries, home office overhead or other projects.

## CONCLUSION

The Contract Sums are not property of the estate and should not be considered cash collateral under the Cash Collateral Motion. Alternatively, Travelers is entitled to adequate protection of the Contract Sums in the form of an order requiring that the Contract Sums, as collected, be deposited into a separate trust account that requires the signature of the Debtor and Travelers before funds can be disbursed, and an Order that

the Contract Sums can be used only for direct Bonded Project costs, and not for other purposes, such as payment of officer salaries, home office overhead or other projects.

        /s/Alberta L. Adams
E.A. "Seth" Mills, Jr., Esq
Florida Bar No. 339652
Email: smills@mpdlegal.com
Alberta L. Adams
Florida Bar No. 80063
Email: aadams@mpdlegal.com
Ryan M. Scully, Esq.
Florida Bar No. 0030944
Email: rscully@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa Street, Ste. 2010
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
Attorneys for Travelers

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically using the CM/ECF system or by U.S. Mail on August 28, 2009 to Stephen R. Leslie, Stichter, Reidel, Blain & Prosser, P.A., 110 East Madison St., Suite 200, Tampa, FL 33602; Debtor, Kearney Construction Co., LLC, 5115 Joanne Kearney Blvd., Tampa, FL 33619; Cynthia Burnette, United States Trustee, Timberlake Annex, Ste. 1200, 501 East Polk Street, Tampa, FL 33602; U.S. Trustee, United States Trustee –

TPA, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, FL 33602; and Local Rule 1007-2 Parties in Interest Matrix.

/s/Alberta L. Adams